## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SAVASENIORCARE, LLC, | |
| Plaintiff/Counterclaim Defendant, | |
| v. | |
| STARR INDEMNITY AND LIABILITY COMPANY, | Civil Action No. 1:18-cv-01991-SDG |
| Defendant/Counterclaim Plaintiff, | |
| and | |
| ASPEN AMERICAN INSURANCE COMPANY, | |
| Defendant/Counterclaim Plaintiff. | |

## <u>OPINION AND ORDER</u>

This matter is before the Court on Plaintiff SavaSeniorCare's (Sava) motion for partial summary judgment [ECF 124] and Defendants Starr Indemnity and Liability Company's (Starr) and Aspen American Insurance Company's (Aspen) (collectively, the Insurers) respective motions to continue Sava's motion for partial summary judgment [ECF 133; ECF 140]. For the following reasons, Sava's motion is **GRANTED** and the Insurers' motions are **DENIED**.

## I.    BACKGROUND

Unless otherwise noted, the following facts are not disputed by the parties or are supported by undisputed evidence in the record. In January 2013, Starr

issued Policy No. SISIFNL20060613 to Sava for the initial policy period of January 21, 2013 through January 31, 2014 (the Starr Policy).[1] Pursuant to a "Mid-Term Run-Off Endorsement" that became effective on October 11, 2013, the Starr Policy provides coverage for Claims made during the October 11, 2013 through October 1, 2019 discovery period for acts allegedly committed before October 11, 2013.[2] The Starr Policy contains a $15 million aggregate policy limit of liability.[3] Sava purchased an additional $10 million in excess insurance coverage from Aspen, Policy Number MCA9J6V13 (the Aspen Excess Policy).[4] The Aspen Excess Policy only provides coverage after exhaustion of the $15 million coverage limits in the Starr Policy.[5] The Aspen Excess Policy follows form to the Starr Policy, meaning that the Aspen Excess Policy generally provides coverage in accordance with the terms and conditions of the Starr Policy.[6]

---

[1]   ECF 124-3 (Starr Policy); ECF 131-1, ¶¶ 1, 3; ECF 144-1, ¶ 1. The Court does not follow the Starr Policy's formatting convention of bolding defined terms, but ascribes the same meaning to those terms as provided in the Starr Policy.

[2]   ECF 131-1, ¶ 15; ECF 144-1, ¶ 2.

[3]   ECF 124-3, at 5.

[4]   ECF 124-4 (Aspen Excess Policy). Where applicable, the Court refers to the Starr and Aspen policies collectively as the "Policies."

[5]   ECF 137-1, ¶ 5.

[6]   ECF 124-4, ¶ I; ECF 137-1, ¶ 5.

The Starr Policy contains a coverage provision entitled the Directors & Officers Liability Coverage Section (D&O Section).[7] In relevant part, the D&O Section provides: "The Insurer shall pay on behalf of the Company the Loss arising from a Claim first made during the Policy Period (or Discovery Period, if applicable) against the Company for any Wrongful Act, and reported to the Insurer in accordance with the terms of this policy."[8] The term Wrongful Act means "with respect to the Company, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by the Company."[9]

The Starr Policy requires Sava to provide Starr with timely notice of a Claim as a condition precedent to receiving insurance coverage.[10] In relevant part, the notice of claim provision (hereafter, Notice Provision) states:

> The Insured(s) shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice of a Claim made against an Insured or an Occurrence, as applicable under the appropriate Coverage Section, to the Insurer at the address set forth in Item 9 of the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

---

[7]   ECF 124-4, ¶ I; ECF 137-1, ¶ 5.

[8]   ECF 124-2, at 19.

[9]   *Id*. ¶ 1.C.

[10]  *Id*. at 23 ¶ 2(l).

With respect to the Directors & Officers Liability Coverage Section, the Insured(s) shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer pursuant to this Clause 5, of a Claim, other than a Pre-Claim Investigation, made against an Insured as soon as practicable after the Company's general counsel or risk manager (or individuals with equivalent responsibilities) becomes aware of the Claim; however, in no event shall such notice be provided later than sixty (60) days after the expiration of the Policy Period (or Discovery Period, if applicable).[11]

Endorsement 50 of the Starr Policy later amended the D&O Section with the following:

b.) <u>Government Funding – Defense Costs Coverage</u>

1.    Loss shall not include the return of any funds received from any federal, state or local governmental agency and any interest, fines or penalties arising out of the return of such funds. However, solely in the event of a Claim(s) for Wrongful Acts arising out of the return, or request to return such funds, this policy shall pay Defense Costs up to an amount not to exceed $1,000,000 ("Government Funding Sublimit of Liability"). The Government Funding Sublimit of Liability shall be part of, and not in addition to, the Limit of Liability applicable to the Directors & Officers and Employment Practices Liability Coverage Section as set forth in Item 4 of the Declarations.[12]

---

[11]   ECF 124-3, at 11–12 ¶ 5, as amended by *id*. at 102 (Endorsement No. 46, ¶ II(B)).

[12]   *Id*. at 109 (Endorsement No. 50, ¶ 2(b)).

Since 2011, Sava has been named in three *qui tam* lawsuits filed by plaintiff-relators in various jurisdictions, as well as in a consolidated action brought by the United States in the Middle District of Tennessee (collectively, the Qui Tam Actions).[13] The lawsuits accuse Sava of violating the False Claims Act (31 U.S.C. § 3729, *et seq.*) by allegedly submitting invoices for excessive or medically unnecessary services not covered by the Medicare program.[14] Each of these actions was initially filed under seal.[15] While the parties dispute the precise time Sava acquired knowledge or notice of the Qui Tam Actions, it is undisputed that the actions were not completely unsealed until October 28, 2015.[16]

On October 30, 2015, Sava notified Starr and Aspen of the Qui Tam Actions and requested insurance coverage for its defense costs.[17] On January 19, 2016, Starr issued a coverage letter to Sava stating: "As discussed in detail below, we have reviewed the provisions of the Policy and confirm that Starr will provide the Insured with defense costs up to $1,000,000, pursuant to the Policy's Healthcare

---

[13]   ECF 131-1, ¶ 22. Each of these four Complaints are attached to Sava's Amended Complaint as ECF 29-3, ECF 29-6, ECF 29-7, and ECF 29-9.

[14]   ECF 131-1, ¶ 22.

[15]   *Id.* ¶ 23.

[16]   *Id.*

[17]   ECF 124-7.

Coverage Extension-Anti-Trust Coverage Extension."[18] Starr further explained that:

> Based on our review . . . the Wrongful Acts described [ ] appear to relate to the return of funds received by Sava from the United States Government for payment to Medicare . . . together with any interest, fines or penalties arising out of the return of such funds. Accordingly, in accordance with Governmental Funding – Defense Costs Coverage, coverage . . . under the Policy is limited only to the payment of Defense Costs up to an amount not to exceed $1,000,000 ("Government Funding Sublimit of Liability"). . . .[19]

The letter also provided the following boilerplate disclaimer:

> Starr continues to reserve all of its rights, remedies, and defenses for this matter under the Policy, in equity, and at law. Neither this letter nor any other prior or future act by or on behalf of Starr shall constitute a waiver of any of Starr's rights, remedies, or defenses. Please note that the foregoing analysis is not meant to be exhaustive as certain other potentially applicable provisions of the Policy that may similarly preclude or limit coverage under the Policy have not been addressed herein.[20]

On March 4, 2016, Starr sent a second letter to Sava purporting to supplement its preliminary coverage determination.[21] Like the first letter, Starr

---

[18]   ECF 124-9, at 1.

[19]   *Id*. at 6.

[20]   *Id*. at 7.

[21]   ECF 124-10.

stated: "[W]e have reviewed the provisions of the Policy and confirm that Starr will provide the Insured with defense costs up to $1,000,000 pursuant to the Policy's Healthcare Coverage Extension-Anti-Trust Coverage Extension."[22] Starr reiterated that "coverage . . . under the Policy is limited only to the payment of Defense Costs up to an amount not to exceed $1,000,000 ('Government Funding Sublimit of Liability').").[23] This letter again contained a boilerplate reservation of rights disclaimer, but also referenced the following: "We note that the first of the Complaints was filed on August 26, 2011. Please advise on what date the Insured was first served with a copy of the Complaints or the Consolidated Complaint."[24]

On June 22, 2017, Starr sent Sava a third coverage letter.[25] Citing the Government Funding Sublimit of Liability provision, Starr again stated that its "coverage obligations under the Policy . . . are limited to defense costs not to exceed $1,000,000."[26] The letter also stated:

> As previously requested in our March 4, 2016 letter, please advise the date(s) on which the Insured was first served with a copy of the complaints, amended complaints, and the Consolidated Complaint.

---

[22]  *Id*. at 3.

[23]  *Id*. at 6.

[24]  *Id*.

[25]  ECF 124-11.

[26]  *Id*. at 2.

> Additionally, Starr reiterates its request for copies of the subpoenas mentioned by defense counsel during a conference call in April 2016 as well as the date(s) when these subpoenas were served. ***Starr reserves its rights with respect to the date that this matter first became a Claim first made against an Insured***.[27]

On November 2, 2017, Sava sent Starr a letter, requesting that "Starr reconsider and withdraw its preliminary position that Sava's coverage for the Qui Tam Claim is limited to $1 million," but also requesting that Starr "promptly reimburse Sava for the $1 million in Defense Costs that Starr has agreed that it owes."[28] On November 30, 2017, Starr sent its fourth letter to Sava and stated that "Starr is not in a position to reconsider its preliminary coverage analysis."[29] Starr again included a boilerplate reservation of rights disclaimer.[30]

On April 6, 2018, Starr sent Sava a fifth coverage letter, purporting to further respond to Sava's November 2, 2017 letter.[31] In this letter, Starr agreed "to advance up to $1 million in Defense Costs under the Government Funding Sublimit, subject to our review of the relevant defense invoices," but noted that "$1 million is Starr's

---

[27]   ECF 124-11, at 2 (emphasis added).

[28]   ECF 124-12, at 2–3.

[29]   ECF 124-13.

[30]   *Id*.

[31]   ECF 124-14, at 2.

maximum Limit of Liability for Defense Costs for the Qui Tam Actions."[32] As with its previous letters, Starr included a boilerplate reservations of rights disclaimer.[33] In none of the above-referenced letters did Starr deny coverage based on, cite to, or reference the Notice Provision or a late-notice defense.[34]

As for Aspen, it acknowledged Sava's claim for coverage on November 3, 2015, but did not make a coverage determination at that time.[35] Over two years later—on January 19, 2018—Aspen issued its first coverage letter to Sava, "adopt[ing] the position set forth in Starr's January 19, 2016 letter. . . . that any potential coverage . . . under the Policy is limited only to the payment of Defense Costs up to an amount not to exceed $1,000,000."[36] According to the January 19, 2018 letter, "the Aspen [Excess] Policy remains excess of the amount of the Underlying Limits and shall not drop down pursuant to the $1 million sub-limit of liability provided by Starr under the Government Funding Sublimit of Liability endorsement."[37] This letter did not deny coverage based on, cite to, or reference

---

[32]   *Id*.

[33]   *Id*.

[34]   ECF 131-1, ¶¶ 33, 36, 40, 42, 46, 49, 55, 57, 62, 64.

[35]   ECF 137-4.

[36]   ECF 124-17, at 2–3.

[37]   *Id*. at 4.

the Notice Provision or a late-notice defense.[38] Like Starr, Aspen included a boilerplate reservations of rights disclaimer.[39]

Sava initiated this action on May 7, 2018.[40] On September 20, 2018, Sava filed its Amended Complaint.[41] The Amended Complaint alleges that Starr and Aspen breached their obligations under the Policies to provide defense costs to Sava in connection with the Qui Tam Actions.[42] The Amended Complaint asserts two causes of action: breach of contract against Starr (Count I) and declaratory judgment against Starr and Aspen (Count II).[43]

On October 4, 2018, Starr filed its Answer, asserting four counterclaim counts for declaratory relief.[44] In Counterclaim Count I, Starr seeks a declaration that "there is no coverage for the Qui Tam Actions under the Policy due to Sava's failure to provide timely written notice . . . in accordance with the terms and

---

[38]   ECF 137-1, ¶¶ 74, 77.

[39]   ECF 124-17, at 5.

[40]   ECF 1.

[41]   ECF 29.

[42]   *See generally id.*

[43]   *Id.* at 30–34.

[44]   ECF 37.

conditions of the Policy."[45] Additionally, Starr asserts two affirmative defenses relevant to this motion; one expressly invoking the Notice Provision (Seventh Affirmative Defense) and a second alluding to potential application of that provision (Twenty-Fourth Affirmative Defense).[46] Aspen filed its Answer on October 25, asserting one omnibus counterclaim for declaratory relief, incorporating Starr's factual allegations, and requesting from the Court twenty declarations of Aspen's rights.[47] Various aspects of the alphabetically-designated counterclaim subpart are premised on, or relate to, the Notice Provision.[48] Additionally, Aspen's eighth affirmative defense expressly invokes the Notice Provision.[49]

On December 6, 2019, Sava filed the instant motion for partial summary judgment, seeking the dismissal of the Insurers' counterclaim counts and

---

[45] *Id*. at 78, ¶ 160.

[46] *Id*. at 37, 30.

[47] ECF 46.

[48] *Id*. at 21–25. For example, Paragraph D states: "[C]overage under the Aspen [Excess] Policy is barred because Sava failed to provide Aspen with timely, sufficient and appropriate written notice of demands, proceedings, and/or other Claims in accordance with Section IV of the Aspen Policy, and any amendments thereto incorporated into the Aspen Policy by endorsement to the Starr Policy (including but not limited to Endorsements Nos. 45 and 46)."

[49] *Id*. at 17.

affirmative defenses to the extent they rely on the Notice Provision or a late-notice defense.[50] Sava filed its motion four months prior to the then-deadline to complete fact discovery (April 30, 2020).[51] Starr filed its response in opposition to Sava's motion for partial summary judgment on December 23, 2019.[52] On the same day, Starr filed its motion to continue, requesting the Court defer ruling on Sava's motion until the parties further developed the factual record.[53] On December 27, Aspen filed its response in opposition and motion to continue Sava's motion for partial summary judgment.[54] On January 10, 2020, Sava filed its reply in support of its motion and response in opposition to the Insurers' motions to continue.[55] The Insurers filed their respective replies on January 24.[56]

---

[50]   ECF 124.

[51]   *See* ECF 129. On August 14, 2020, the Court entered its most recent Order extending the deadline for fact discovery in this case until November 30, 2020 [ECF 189].

[52]   ECF 131.

[53]   ECF 133.

[54]   ECF 137; ECF 140.

[55]   ECF 144; ECF 145.

[56]   ECF 152; ECF 154.

## II.    LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment has the initial burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant meets its burden, the non-movant opposing summary judgment must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324. A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary" are not material. *Id.* A factual dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The non-movant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* If the evidence relied on by the non-movant is "merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249.

In determining whether a genuine issue of material fact exists, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that party. *Id.* at 255. *See also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions" and cannot be made by the district court. *Anderson*, 477 U.S. at 255. *See also Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Summary judgment for the moving party is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). *See also Anderson*, 477 U.S. at 250 ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.").

## III.   DISCUSSION

Sava requests the Court enter partial summary judgment against the Insurers' counterclaim counts and affirmative defenses premised on the Notice Provision or a late-notice defense because the Insurers waived this defense by not

including it in their pre-litigation coverage letters. The Insurers oppose Sava's

motion, but also move separately to request that the Court defer ruling on Sava's

motion until the discovery record is further developed.

> **a.     Starr and Aspen Waived any Late-Notice Defense.**

Sava argues Starr and Aspen waived their right to assert a late-notice

defense to coverage in this litigation. The parties agree that Georgia law applies to

this case. Sava's motion hinges on the Georgia Supreme Court's decision in *Hoover*

*v. Maxum Indemnity Company*, 291 Ga. 402 (2012). In *Hoover*, the plaintiff sustained

a brain injury while working for his employer. *Id*. at 402. The plaintiff filed a

personal injury lawsuit against the employer, which held a commercial liability

insurance policy issued by the defendant insurer. *Id*. at 403. The insurer denied

coverage under the policy, issuing a letter stating that it would not provide a

defense or indemnification pursuant to the policy's Employer Liability Exclusion.

*Id*. at 403–04. In the letter, the insurer purported to reserve its right to raise other

coverage defenses in the future, including that "coverage for this matter may be

barred or limited to the extent the insured has not complied with the notice

provisions under the policy." *Id.* at 404.[57] The letter also contained a boilerplate

reservation of rights disclaimer. *Id.* After obtaining a negligence judgment against

his employer, the plaintiff filed suit against the insurer—pursuant to an

assignment of claims from the employer—asserting a breach of the duty to defend

and seeking indemnification. *Id.* at 402.

In reversing the Georgia Court of Appeals, the Georgia Supreme Court held

that the insurer "waived its right to assert a defense based on untimely notice

because it did not properly alert [employer] that the lack of timely notice would

be a potential bar to coverage." *Id.* at 403. As such, that court held that the "timely

notice of the occurrence was not a prerequisite to [insurer's] duty to defend." *Id.*

The court articulated the following framework:

> Under Georgia law, where an insurer is faced with a
> decision regarding how to handle a claim of coverage at
> the same time a lawsuit is pending against its insured,
> the insurer has three options. First, the insurer can
> defend the claim, thereby waiving its policy defenses and
> claims of non-coverage. Second, the insurer can deny
> coverage and refuse to defend, leaving policy defenses
> open for future litigation. Or, third, the insurer can
> defend under a reservation of rights.

---

[57]   The notice provision in the policy provided that: "You must see to it that we
are notified as soon as practicable of an 'occurrence' or an offense which may
result in a claim." *Id.*

*Id.* at 404–05 (internal citations omitted).

The court made clear that what an insurer **cannot** do is "both deny a claim outright and attempt to reserve the right to assert a different defense in the future." *Id.* at 405. What is more, an insurer can only reserve its rights if it "undertakes a defense while questions remain about the validity of the coverage." *Id.* "A reservation of rights does not exist so that an insurer who has *denied coverage* may continue to investigate to come up with additional reasons on which the denial could be based if challenged." *Id.* at 406 (emphasis in original). Instead, the purpose of a reservation of rights is to "protect both the insurer and the insured by allowing an insurer who is uncertain of its obligations under the policy to undertake a defense while reserving its rights to ultimately deny coverage following its investigation or to file a declaratory judgment action to determine its obligations." *Id. See also id.* at 405 ("When an insurer is presented with notice of a claim and demand for a defense, the proper and safe course of action . . . is to enter upon a defense under a reservation of rights and then proceed to seek a declaratory judgment in its favor.").

On the facts, the Georgia Supreme Court held that the insurer waived its ability to raise a defense related to an untimely notice provision in the insurance policy because "despite ample opportunity to . . . notify [the employer] of its intent

to raise a defense based on improper or untimely notice of the occurrence, [insurer] chose to focus solely on the Employer Liability Exclusion." *Id*. at 407. The insurer's "continued failure to fairly inform [the employer] of its intention to raise a defense related to untimely notice means [insurer] waived the defense." *Id*. Additionally, the insurer's reservation of rights was "inadequate because it did not unambiguously inform [the employer] that [insurer] intended to pursue a defense based on untimely notice of the claim." *Id*. at 406. The insurer's reliance on "boilerplate language in the denial letter purporting to reserve the right to assert a myriad of other defenses at a later date did not clearly put [the employer] on notice of [insurer's] position." *Id*. Therefore, the court found the insurer waived its notice defense and summary judgment was appropriate on the breach of the duty to defend claim. *Id*. at 407–08. *See also Latex Const. Co. v. Everest Nat. Ins. Co.*, 11 F. Supp. 3d 1193, 1201 (N.D. Ga. 2014) ("For the same reasons given by the Georgia Supreme Court in *Hoover* [ ], the Court finds that [defendant insurer] is precluded from raising a defective notice defense and [plaintiff] is entitled to partial summary judgment on the issue of notice."); *Moon v. Cincinnati Ins. Co.*, 920 F. Supp. 2d 1301, 1305 (N.D. Ga. 2013) ("[L]ike the insurer in *Hoover*, [defendant insurer] failed to properly reserve its rights to assert additional defenses when it

denied the insured's claims on specific grounds and refused to undertake a defense.") (punctuation omitted).

The application of *Hoover* to the undisputed material facts of this case compels the conclusion that Starr and Aspen waived their right to raise a late-notice defense. After Sava notified the Insurers of the Qui Tam Actions and requested coverage on October 30, 2015, Starr sent five separate letters to Sava declining to provide full coverage—and expressly limiting its liability for Sava's defenses costs to $1 million—based on the Starr Policy's Government Funding Sublimit of Liability provision. None of these letters denied coverage based on, cited to, or referenced the Notice Provision or a late-notice defense. Likewise, Aspen's January 19, 2018 letter adopted the coverage position articulated by Starr without citation or reference to the Notice Provision or a late-notice defense. Once the Insurers denied coverage based exclusively on the Government Funding Sublimit of Liability provision, they forfeited the right to raise additional or alternative defenses. *Hoover*, 291 Ga. at 405. *See also Latex*, 11 F. Supp. 3d at 1202. This includes the late-notice defenses raised for the first time in this litigation over three years after Starr's initial coverage letter. *See Payne v. State Farm Fire & Cas. Co.*, No. 1:11-cv-309-AT, 2012 WL 13006060, at *14 (N.D. Ga. Aug. 28, 2012) ("[T]he *Hoover* court held simply that, when an insurer sends a denial letter, it

must specify the reasons for its denial of coverage within that letter and cannot reserve its right to assert further unspecified defenses in the future. . . . *Hoover* [ ] preclude[s] an insurer from defending itself against . . . suit by raising defenses to coverage that it did not assert in its denial letter."). The Insurers point to no evidence creating a genuine issue of material fact on this point.

The Insurers argue that, as a factual matter, they did not "deny" Sava coverage under the Policies because Starr agreed all along to pay Sava $1 million—out of the $15 million Starr Policy limit—based on the Government Funding Sublimit of Liability provision. At the outset, this argument is wholly inapplicable to Aspen. The Aspen Excess Policy provides a maximum of $10 million in excess coverage only after exhaustion of the $15 million liability limit in the Starr Policy. In its January 19, 2018 letter, Aspen expressly adopted Starr's position and stated that coverage "is limited only to the payment of Defense Costs up to an amount not to exceed $1,000,000." Aspen further stated that since "coverage for the Submitted Matter appears limited to the $1 million sublimit . . . provided by the Starr Policy . . . the Aspen Policy remains excess of the amount of the Underlying Limits and shall not drop down. . . ." Thus, Aspen's position is ostensibly that it owes Sava nothing under the Aspen Excess Policy. That is an unambiguous denial of insurance coverage.

Starr, somewhat more convincingly, posits that its offer to pay $1 million pursuant to the sublimit—while simultaneously denying any further liability up to the Starr Policy's limits—is not a *denial* of coverage per se, but rather amounts to accepting coverage accompanied by a reservation of rights. Contrary to Starr's characterization, however, no Georgia court has explicitly answered the question of whether invoking a policy's sublimit of liability provision constitutes a "denial" of coverage for the remainder of the policy's limits. In such circumstances, the Court "must make an educated guess as to how that state's supreme court would rule." *State Farm Mut. Auto. Ins. Co. v. Bates*, 542 F. Supp. 807, 821 (N.D. Ga. 1982) (collecting cases). Given the principles embodied in *Hoover* and its progeny, the Court concludes that invoking a policy's sublimit of liability provision constitutes a "denial" of all other coverages for purposes of determining whether any subsequently noticed defenses have been waived.

Even if the Court assumed Starr *did not* deny coverage per se, Sava would still prevail, as the Insurers failed to properly reserve their rights to a late-notice defense. Georgia law commands that, in order to be effective, a reservation of rights must be unambiguous. *Hoover*, 291 Ga. at 406; *World Harvest Church, Inc. v. GuideOne Mut. Ins. Co.*, 287 Ga. 149, 152–53 (2010). "[I]f it is ambiguous, the purported reservation of rights must be construed strictly against the insurer and

liberally in favor of the insured." *Hoover*, 291 Ga. at 406 (quoting *World Harvest Church*, 287 Ga. at 152–53 (citations and punctuation omitted)). A reservation of rights is not effective if it does not fairly inform the insured of the insurer's position. *Hoover*, 291 Ga. at 406.

Starr's initial coverage letter contained a boilerplate reservation of rights disclaimer. Four subsequent coverage letters sent by Starr additionally contained boilerplate reservation language. None of these letters cited or referenced the Notice Provision or a late-notice defense. Aspen's coverage letter had the same flaws. These reservations of rights are ineffective as a matter of law. *See Latex*, 11 F. Supp. 3d at 1203 (concluding that boilerplate reservation of rights "does not clearly put the insured on notice of the insurer's position."); *Moon*, 920 F. Supp. 2d at 1306 n.2 ("[T]he boilerplate reservation of rights contained in [defendant insurer's] denial letter does not reserve additional grounds for denial beyond those explicitly stated in the letter."). *See also Facility Invs., LP v. Homeland Ins. Co. of New York*, 321 Ga. App. 103, 109 (2013) (citing *Hoover*, 291 Ga. at 406; *World Harvest Church*, 287 Ga. at 152–53).

In its third coverage letter, dated June 22, 2017 (approximately 20 months after Sava notified the Insurers of its claim), Starr attempted to "reserve[ ] its rights with respect to the date that this matter first became a Claim first made against an

Insured."[58] This disclaimer, however, cannot reasonably be construed as *unambiguously* placing Sava on notice that Starr intended to pursue a late-notice defense. Nor did it fairly inform Sava of Starr's position. The *Hoover* court found a similar—yet more specific—reservation of rights based on a notice provision insufficient. 291 Ga. at 403. Starr's ambiguous notice is strictly construed against it and liberally in favor of Sava. *Id.* at 406; *World Harvest Church*, 287 Ga. at 152–53. At bottom, the Insurers' attempts to reserve their rights are categorically ineffective under Georgia law and they waived any late-notice defenses.

### b.   *Hoover* Applies to the Insurers' Duty to Pay Defense Costs.

Starr and Aspen contend *Hoover* is inapplicable because the Policies here contain a duty to pay defense costs, not a duty to defend Sava—the latter of which was only at issue in *Hoover*. As the Insurers acknowledge, this argument has been expressly rejected by courts in this district. *Langdale Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.*, 110 F. Supp. 3d 1285, 1297 (N.D. Ga. 2014) ("The Court concludes that the duty to defend and the duty/obligation to pay costs of litigation should be treated as analogous for purposes of consideration of the applicability of the holding in *Hoover*; therefore, the holding of the *Hoover* case is not

---

[58]   ECF 124-11, at 2.

distinguishable on this ground."). *See also Philadelphia Indem. Ins. Co. v. First Multiple Listing Servs., Inc.*, 173 F. Supp. 3d 1314, 1321 (N.D. Ga. 2016) ("[T]he waiver principle in *Hoover* applies to both the duty to indemnify and the duty to defend."); *Latex*, 11 F. Supp. 3d at 1205 ("[T]he Court does not interpret *Hoover* [ ] to be limited to an insurer's duty to defend."). Nonetheless, Starr and Aspen focus on *Langdale*, arguing that decision was incorrect, not persuasive, and non-binding.

In *Langdale*, Judge Steve C. Jones noted that "Georgia courts have not had the opportunity to address this issue first hand." 110 F. Supp. 3d at 1296. However, the court addressed the same authorities relied on by Starr and Aspen and found them not "controlling on this issue." *Id.* at 1297. The court instead found that "Georgia courts consider the duty to defend or pay the expenses of litigation analogous." *Id.* at 1296 (citing *George L. Smith II Ga. World Cong. Ctr. Auth. v. Miller Brewing Co.*, 255 Ga. App. 643, 644 (2002)). In addition, the court found "persuasive authority that suggests that a duty to pay defense costs and the duty to defend are different, but similar in result." *Langdale*, 110 F. Supp. 3d at 1297 (citing *Liberty Mut. Ins. Co. v. Pella Corp.*, 650 F.3d 1161, 1170–71 (8th Cir. 2011)). In sum, the court concluded that *Hoover* is applicable to both the duty to defend and the duty to pay the costs of litigation. *Id.* at 1297. Although the Eleventh Circuit did not have occasion to explicitly affirm this conclusion—as it upheld the district court's

eventual holding that *Hoover* did not apply on a separate ground not relevant here—the circuit court seemingly agreed with the district court's analysis on this issue. *See Langdale Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.*, 609 F. App'x 578, 584 (11th Cir. 2015) ("In a thorough and careful opinion, the district court . . . agreed with [plaintiff] that [insurer's] obligation to advance defense costs was the same obligation as a duty to provide a defense.").

The Court here finds the analysis in *Langdale* persuasive and adopts it in this case. The duty to pay defense costs under the Starr Policy is synonymous with the duty to defend discussed in *Hoover*. What is more, and as noted in *Latex*, the Court does not believe that the Georgia Supreme Court intended *Hoover* to be so narrowly limited as to only cover an insurer's duty to defend. Such a finding is not supported by the decision itself or in the underlying history of the case. The Court also finds persuasive that the court in *Langdale* considered and rejected the precise authorities pointed to by the Insurers here. The Insurers provide no compelling reason why this Court should depart from that position.[59] Moreover, the Court

---

[59] The Insurers argue that "Judge Jones himself corrected his understanding" in a subsequent decision: *Aldridge v. Travelers Home & Marine Ins. Co.*, No. 1:16-cv-1247-SCJ, 2018 WL 2056567, at *3 (N.D. Ga. Jan. 25, 2018). In *Aldridge*, the court found *Hoover* did not apply—and distinguished the prior decisions in *Langdale*, *Latex*, and *Moon*—because *Hoover* applies "only when an insurer is faced with a decision regarding how to handle a claim of coverage at the same

believes that the cases relied on in *Bank of Camilla v. St. Paul Mercury Ins. Co.*, 939 F. Supp. 2d 1299, 1308 (M.D. Ga. 2013),[60] do not support the ultimate conclusion in that case. In sum, the Court finds no merit in the Insurers' arguments; *Hoover* is applicable to this case.

### c.    The Amount of Information Known by the Insurers at the Time of Their Denial Letters Is Not Material to Resolving this Motion.

The Insurers' final argument is that they lacked the necessary information to assert a late-notice defense at the time they sent their original coverage letters. In support, the Insurers point to the general waiver standard under Georgia law. *See Camacho v. Nationwide Mut. Ins. Co.*, 188 F. Supp. 3d 1331, 1360 (N.D. Ga. 2016) ("[A]ll the attendant facts, taken together, must amount to an intentional relinquishment of a known right, in order that a waiver may exist."). This argument misses the point of *Hoover*.

To reiterate, when Sava notified Starr and Aspen of the Qui Tam Actions and requested coverage, the Insurers had three options: (1) "defend the claim, thereby waiving [their] policy defenses and claims of non-coverage"; (2) "deny

---

time a lawsuit is pending against its insured," which was absent under the facts of that case. *Id.* (emphasis omitted). Here, it is undisputed that the Qui Tam Actions were pending against Sava at the time it requested coverage. This, in fact, strengthens Sava's argument that *Hoover* applies here.

[60]    See ECF 131, at 20–23; ECF 137, at 18–19.

coverage and refuse to defend, leaving policy defenses open for future litigation";
and (3) "defend under a reservation of rights." *Hoover*, 291 Ga. at 404–05.
The Insurers were not permitted to do what they did here—deny the lion-share of
the policies' coverage limits on one ground, issue a boilerplate reservation of
rights, and then "continue to investigate to come up with additional reasons on
which the denial could be based if challenged." *Id*. at 406. It is immaterial that Starr
and Aspen believe they lacked the necessary facts to assert a late-notice defense at
the time they sent Sava their coverage letters. They chose the wrong path.

As *Hoover* made clear, "[w]hen an insurer is presented with notice of a claim
and demand for a defense, the proper and safe course of action . . . is to enter upon
a defense under a reservation of rights and then proceed to seek a declaratory
judgment in its favor." 291 Ga. at 417. While the Insurers may believe this creates
negative practical effects (a point emphasized by three Justices of the Georgia
Supreme Court in a separate opinion in *Hoover*[61]), this Court is constrained by, and

---

[61]  *See Hoover*, 291 Ga. at 412–13 (Melton, J., concurring specially in part and
dissenting in part) ("Based on the majority's new rule of law, insurers who
wish to deny coverage will be forced to attempt to list all defenses in their
initial denial letter. They must do so blindly, in the absence of necessary
information and the discovery later litigation might provide. This result helps
neither the insurance company, which must scramble to come up with all
possible defenses in good faith, nor the insured, who will have no good context
of where he or she stands in the face of a laundry list of defenses. The result

will not second-guess, the decision of the Georgia Supreme Court on a matter of Georgia law. *E.g.*, *LeFrere v. Quezada*, 582 F.3d 1260, 1263–64 (11th Cir. 2009) ("In addressing issues of state law, we are bound by the decisions of the state supreme court."); *Blue Cross & Blue Shield of Ala., Inc. v. Nielsen*, 116 F.3d 1406, 1413 (11th Cir. 1997) ("The final arbiter of state law is the state supreme court."); *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir. 1982) ("In determining the law of the state, federal courts must follow the decisions of the state's highest court.").

### d.    The Insurers' Motions to Continue Is Denied.

Alternative to their opposition to Sava's motion, the Insurers filed contemporaneous motions to continue the Court's ruling until the factual record was further developed. In support, the Insurers identify a litany of written, oral, and documentary discovery outstanding at that time, as well as objections to the information that had been produced. According to the Insurers, this information is necessary to determine if they waived their late-notice defense.

---

may also increase the number of instances in which an insurance company seeks to reserve rights, rather than deny a claim, and subsequently seek a declaratory judgment regarding coverage. This will only serve to further clog trial courts.").

The Court does not agree. The Court possesses all the relevant information needed to resolve Sava's motion. As noted by the court in *Latex*, the "salient facts" are the Insurers' letters denying coverage and attempting to reserve all future rights. 11 F. Supp. 3d at 1207. And like *Latex*, none of this evidence is disputed. The parties agree the coverage letters speak for themselves and have not challenged their authenticity. Although the Insurers submit a considerable amount of briefing on the issue of when exactly Sava gained knowledge of the Qui Tam Actions, this is irrelevant to the inquiry and does not create an issue of material fact. Thus, no further discovery is needed for the Court to make its finding that the Insurers waived any late-notice defense.[62]

## IV.  CONCLUSION

Sava's motion for partial summary judgment [ECF 124] is **GRANTED**. The Insurers' motions to continue [ECF 133; ECF 140] are **DENIED**. The following are hereby **DISMISSED**: (1) Starr's counterclaim for declaratory relief based on late notice (Counterclaim Count I); (2) Starr's seventh affirmative defense; (3) Starr's twenty-fourth affirmative defense (to the extent it pertains to late

---

[62]  The parties included various requests for oral argument in their motion papers. Because the Court finds that oral argument is unnecessary to resolve the outstanding motions, these requests are denied.

notice); (4) Aspen's omnibus counterclaim for declaratory relief (to the extent it pertains to late notice); and (5) Aspen's eighth affirmative defense.

**SO ORDERED** this the 29th day of September 2020.

Steven D. Grimberg
United States District Court Judge